UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FAIRMONT INSURANCE BROKERS LTD.,

                      Plaintiff,

      -against-

HR SERVICE GROUP D/B/A INFINITI HR,

                      Defendant.

**MEMORANDUM & ORDER**
**23-CV-8654 (NGG) (LB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Fairmont Insurance Brokers Ltd. ("Fairmont") sued Defendant HR Service Group d/b/a Infiniti HR ("Infiniti") in the Supreme Court of the State of New York, Kings County, alleging breach of contract and other common law claims arising out of Infiniti's alleged breach of its agreement to "manage and administer" the health insurance benefits for Fairmont's employees. (Complaint ("Compl.") (Dkt. 1-1) ¶ 12.) Infiniti timely removed the action to the United States District Court for the Eastern District of New York, invoking the court's federal question jurisdiction. (Notice of Removal (Dkt. 1) at ¶ 4.) Infiniti now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that Fairmont's claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). (Defendant's Motion to Dismiss ("Def.'s Mot.") (Dkt. 12-2) at 1-2.) Fairmont opposes the motion. (Plaintiff's Memorandum of Law in Opposition ("Pl.'s Opp.") (Dkt. 13).) For the reasons that follow, Infiniti's motion is DENIED, Fairmont's request for oral argument is DENIED as moot, and this case is REMANDED to state court.

1

## I.  BACKGROUND[1]

On November 30, 2021, Fairmont and Infiniti entered into a "Client Service Agreement" (the "Contract") pursuant to which Infiniti agreed "to provide professional employment services and to enter into a co-employment or shared employment relationship with regard to [Fairmont's employees]." (Contract (Dkt. 12-1) at ECF 4.) As defined by the Contract, "co-employment is a relationship where Infiniti HR and [Fairmont] simultaneously employ and share certain responsibilities for managing assigned employees." (*Id.*)

One of those responsibilities includes an agreement by Infiniti to "manage and administer" health insurance benefits for Fairmont's employees. (Compl. ¶¶ 6, 8, 11-12.) Specifically, Section 1(D) of the Contract provides, in pertinent part:

> Infiniti HR will manage and administer group supplemental benefit plans covering Assigned Employees, including all benefit claims, record keeping and compliance. [Fairmont] hereby authorizes Infiniti HR to collect insurance premiums for benefit plans from the Employees and remit them to the applicable insurance carrier(s). Infiniti HR shall make timely payments for all of its obligations under such benefit programs.

In accordance with its obligations under the Contract, Infiniti contracted with NuAxess 2, Inc. ("NuAxess") to provide a health insurance plan (the "Plan") for Fairmont's employees. (Compl. ¶ 8; Insurance Plan (Dkt. 12-1) at ECF 14-91.)

---

[1] The following facts are drawn from the Complaint and, for purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

2

Eventually, Fairmont's employees informed Fairmont that their healthcare providers were declining treatment, citing non-payment by NuAxess as the reason for their refusal. (*Id.* at ¶ 9.) Fairmont discovered that NuAxess had stopped paying healthcare professionals, causing the medical bills of employees to remain unpaid and accruing interest. (*Id.* at ¶ 10.)

Fairmont filed the instant Complaint against Infiniti in Kings County Supreme Court on October 23, 2023, alleging: (Count I) breach of contract; (Count II) breach of fiduciary duties; (Count III) negligence; and seeking (Count IV) a declaratory judgment. (*Id.* ¶¶ 20-38.) Specifically, Count I alleges that Infiniti breached the Contract when it failed to "manage and administer health insurance benefits" for Fairmont's employees; Count II alleges that Infiniti breached its fiduciary duty "as clearly articulated in the Contract" when it "fail[ed] to ensure that the [e]mployees received the healthcare services they were entitled to under the Contract"; Count III alleges that Infiniti acted negligently when it "fail[ed] to provide the necessary oversight and management . . . [and] ensure the timely processing and payment of medical claims"; and Count IV seeks a declaratory judgment that:

> [Infiniti] must cover, indemnify, and provide compensation to [Fairmont's employees] for all costs and losses resulting from [Infiniti's] breach of the Contract, breach of fiduciary duty, and/or negligence, including but not limited to medical bills, interest accrued on unpaid medical bills, and any other related financial and non-financial losses incurred by the [e]mployees as a direct result of [Infiniti's] negligence and breaches.

> [The court] affirm the rights of the [e]mployees to receive the healthcare benefits and services that they were contractually entitled to under the Contract.

(*Id.* at ¶¶ 20-21, 25-26, 30-31, 35-36.)

According to the Complaint, the Contract requires Infiniti to "maintain and administer" health insurance benefits for Fairmont's employees, and "once NuAxess stopped paying the medical professionals, [Infiniti] had a duty to provide additional coverage offerings." (*Id.* ¶ 11.) In other words, "it was incumbent upon [Infiniti], under the Contract, to ensure that health care services for the [e]mployees were provided without interruption, and to promptly address any issues that arose in the course of fulfilling these obligations." (*Id.* ¶ 15.) This included rectifying "any financial burdens, expenses, or losses incurred by the [e]mployees due to the disruption of their medical benefits." (*Id.* ¶ 16.)

Infiniti timely removed the action to this court on the basis of federal question jurisdiction, asserting that Fairmont's "action arises under and is preempted by § 502(a) of [ERISA]." (Notice of Removal at ¶ 4.) Specifically, Infiniti argued that Fairmont "was a participating employer in, and, thus, a fiduciary of," an ERISA-governed multiemployer plan, and, as a matter of law, "[Fairmont's] claims in Counts II, III, and IV arise under [and are] completely preempted by" ERISA Section 502(a). (*Id.* at ¶¶ 5-6.) However, Infiniti stated that the court "should exercise supplemental jurisdiction over [Fairmont's] claim in Count I of the Verified Complaint, which does not arise under the laws of the United States." (*Id.* ¶ 11.)

Before the Court is Infiniti's March 15, 2024 motion to dismiss the Complaint *in its entirety*[2] pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground that "ERISA preempt[s] all of Fairmont's state law claims." (Def.'s Mot. at 4.)

---

[2] Infiniti has apparently retreated from its initial argument, raised in its Notice of Removal, that ERISA completely preempts only Counts II, III, and IV of the Complaint. (Notice of Removal at ¶¶ 6, 11.) Infiniti now asserts that all four counts of the Complaint are completely preempted by ERISA. (Def.'s Mot. at 1-2.)

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[3] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint must contain facts that do more than present a "sheer possibility that a defendant has acted unlawfully." *Id.* "Dismissal under Rule 12(b)(6) is therefore appropriate only if it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024).

In deciding a motion to dismiss, the court accepts as true all factual allegations contained in the complaint and draws all reasonable inferences in the plaintiff's favor. *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). In addition to the complaint, the court may consider "documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). "[W]here the complaint relies heavily upon [a document's] terms and effect," such as a contract, it is considered "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Although the court is "not constrained to accept the allegations of the complaint in respect of the construction of the [contract]," "any contractual ambiguities" should be resolved in favor of the plaintiff. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d

---

[3] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

69, 72 (2d Cir. 1995). In the instant case, because the Contract and Plan documents are either incorporated by reference in the Complaint or are integral to the Complaint, the court considers those documents in adjudicating Infiniti's motion to dismiss.

## III. DISCUSSION

Infiniti moves to dismiss the Complaint on the grounds that "ERISA preempt[s] all of Fairmont's state law claims" and "ERISA's exclusive remedies do not provide a vehicle for Fairmont to obtain the relief it seeks." (Def.'s Mot. at 4.) Specifically, Infiniti argues that the Plan is an "employee welfare benefit plan" governed by ERISA, that Fairmont's claims "relate to" the Plan, and that ERISA therefore preempts Fairmont's state law claims. (*Id.* at 5-6.) At the same time, Infiniti asserts that Fairmont "legally cannot replead its claims under ERISA." (*Id.* at 4.) Instead, "Fairmont's employees' right to seek relief is the sole appropriate course of action." (Def.'s Reply (Dkt. 14) at 8.) Thus, Infiniti argues, the court should not only dismiss Fairmont's Complaint, but should do so with prejudice because Fairmont cannot replead its state law claims under ERISA. (Def.'s Mot. at 4.)

Fairmont opposes the motion, asserting, *inter alia*, that its claims "do not derive from the rights and obligations" established by the Plan, but rather, derive from Infiniti's separate promise under the Contract "to provide continuous medical coverage and timely payments on behalf of [Fairmont's] employees." (Pl.'s Opp. at 8.) Thus, Fairmont argues, its claims do not "relate to" any employee benefit plan and are therefore not preempted by ERISA. (*Id.* at 8-9.) Fairmont additionally argues that preemption would leave it without a remedy as to Infiniti's alleged breach of the Contract, a result it contends would be contrary to "the statutory purpose of ERISA." (*Id.* at 10-11.)

6

### A.  Applicable Law

The court has an independent obligation to assure itself of its own jurisdiction. *Arnold v. Lucks*, 392 F.3d 512, 517 (2d Cir. 2004). "A civil claim filed in state court can only be removed to federal court if the district court would have had original jurisdiction to hear the claim." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011); 28 U.S.C. § 1441(a). Federal courts have original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (also known as "federal question" jurisdiction). Typically, a cause of action "arises under" federal law only "when the plaintiff's well-pleaded complaint raises issues of federal law." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987). This means that federal preemption, raised as a defense to the plaintiff's suit, "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Id.*

Express preemption "is one of the three familiar forms of ordinary defensive preemption (along with conflict and field preemption)." *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238 (2d Cir. 2014). It occurs "when Congress withdraws specified powers from the States by enacting a statute containing an express preemption provision." *Id.* "As an ordinary defensive preemption claim, express preemption cannot support federal jurisdiction because it would not appear on the face of a well-pleaded complaint." *Id.*

However, the Supreme Court has recognized an exception to the well-pleaded complaint rule—the "complete preemption" doctrine—under which Congress "may so completely pre-empt a particular area [of law] that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life*, 481 U.S. at 63-64. In other words, "certain federal statutes have such extraordinary preemptive force that state-law claims coming within the scope of the federal statute are transformed, for

jurisdictional purposes, into federal claims—*i.e.*, completely preempted." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005). The Supreme Court has found only three statutes to contain a complete preemption provision: Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *see Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968); Sections 85 and 86 of the National Bank Act, 12 U.S.C. §§ 85-86, *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7-11 (2003); and Section 502(a) of ERISA, 29 U.S.C. § 1132(a), *see Metro. Life*, 481 U.S. at 65-66. "When a plaintiff raises such a completely preempted state-law claim in his complaint, a court is obligated to construe the complaint as raising a federal claim and therefore 'arising under' federal law." *Sullivan*, 424 F.3d at 272.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990). The statute sets various uniform standards governing "employee benefit plans," which it defines as plans that are either "an employee welfare benefit plan," or "an employee pension benefit plan," or both. 29 U.S.C. § 1002(3). An employee welfare benefit plan includes "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing [medical care or benefits] for its participants or their beneficiaries." *Id.* § 1002(1).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). To that end, "ERISA provides for two types of preemption: complete preemption under Section 502; and express preemption under Section 514." *Rubin v. Hodes*, No. 18-CV-7403 (SJF) (AKT), 2020 WL 132352, at *7 (S.D.N.Y. Jan. 13, 2020); *see generally Wurtz*, 761 F.3d at 238.

Section 514 provides that ERISA "shall supersede any and all State laws[4] insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This is ERISA's *express* preemption provision: it displaces any state laws that "relate to" employee benefit plans with "the federal common law of ERISA." *Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 102 F.4th 572, 598-600 (2d Cir. 2024); *id.* at 598 (discussing the various tests adopted by the Supreme Court to determine when a state law "relates to" an employee benefit plan); *see also id.* at 600 (noting that "ERISA express preemption, and its displacement of state contract law with federal common law, does not create 'arising under' jurisdiction").

Section 502(a) of ERISA provides plan participants, beneficiaries, fiduciaries, employers, and certain other persons with specified civil remedies to, among other things, recover benefits due under their employee benefit plans, enforce rights under their plans, or seek other plan-related relief authorized under that section. *See* 29 U.S.C. § 1132(a). This is ERISA's *complete* preemption provision: according to the Supreme Court, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remed[ies] [contained in Section 502(a)] conflicts with the clear congressional intent to make the ERISA remedy exclusive and is [completely] pre-empted." *Davila*, 542 U.S. at 209. Section 502(a) is "one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* In other words, "causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." *Id.*

---

[4] "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

The Supreme Court defined the contours of ERISA complete preemption in *Davila*. There, participants in and beneficiaries of separate employee benefit plans sued their respective plan administrators under state law, in state court, alleging injuries arising out of the administrators' decision not to provide coverage for treatment recommended by their physicians. *Davila*, 542 U.S. at 204-05. The question before the Court was whether ERISA completely preempted the state law claims. *Id.* at 204.

The Court noted that Section 502(a)'s enforcement mechanism is "a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* at 208. The civil enforcement provisions found in Section 502(a) "provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Id.* at 209 (emphasis in original). In other words, the enforcement provisions listed in Section 502(a) are the exclusive remedy for rights guaranteed by ERISA, and any state law cause of action that duplicates, supplements, or supplants those enforcement provisions is completely preempted. *Davila*, 542 U.S. at 209.

The Court then assessed one of the Section 502(a) civil enforcement provisions, Section 502(a)(1)(B). That subsection provides:

> A civil action may be brought—(1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B). Applying that provision and the preemption principles discussed above, the Court concluded that if "an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B)," and "there is no other independent legal duty that is implicated by a defendant's actions,"

then the individual's cause of action is completely preempted by ERISA § 502(a)(1)(B). *Davila*, 542 U.S. at 210. Thus, because the petitioners could have sought reimbursement for the denial of their benefits pursuant to Section 502(a)(1)(B), and because the complained-of actions did not violate legal duties independent of ERISA or the terms of the employee benefit plans at issue, the Court held that ERISA completely preempted their state law claims. *Id.* at 210-12.

Although *Davila* framed the two-part test in terms of Section 502(a)(1)(B), the Second Circuit has applied the test to Section 502(a) more broadly. *See White Oak,* 102 F.4th at 605-06 (concluding that ERISA completely preempted trustees' petition because their claims were cognizable under ERISA § 502(a)(3)). Thus, under *Davila*, "[a] claim falls within the scope of the ERISA civil enforcement mechanism [and is completely preempted] if it is brought (1) by an individual who, at some point in time, could have brought [their] claim under ERISA § 502(a), and (2) there is no other independent legal duty that is implicated by a defendant's actions." *Id.* at 606. The first *Davila* prong is satisfied if the plaintiff (a) "is the type of party who can bring a claim pursuant to § 502(a)[] of ERISA; and (b) the actual claim asserted can be construed as a colorable claim . . . pursuant to § 502(a)[]." *Arditi v. Lighthouse Intern.*, 676 F.3d 294, 299 (2d Cir. 2012); *see White Oak,* 102 F.4th at 606. The *Davila* test "is conjunctive; a state-law cause of action is [completely] preempted only if both prongs of the test are satisfied." *Teamsters Local 272*, 642 F.3d at 328.

The distinction between express and complete preemption is a critical, though sometimes overlooked, aspect of ERISA preemption. State law claims which fall outside of the scope of Section 502(a), even if preempted by Section 514(a), are governed by the well-pleaded complaint rule and are *not* removable under the complete preemption doctrine. In other words, even if a state law claim "relates to" an ERISA plan pursuant to Section 514(a), if

the claim cannot be construed as a cause of action under Section 502(a), complete preemption does not apply, and removal on that basis is improper. *Wurtz*, 761 F.3d at 238 (noting that "complete preemption can be the basis for federal subject-matter jurisdiction, but express preemption cannot"); *see White Oak*, 102 F.4th at 600 (explaining that "ERISA express preemption, and its displacement of state contract law with federal common law, does not create 'arising under' jurisdiction. . . . for jurisdiction to be proper, the [complaint] must state a cause of action contained within ERISA or another federal statute"); *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 23-27 (1983) (holding that preemption under Section 514(a) does not permit a defendant to remove a suit brought in state court to federal court when the plaintiff's state claim does not fall within the scope of Section 502(a)'s civil remedy provisions); *Metro. Life*, 481 U.S. at 64 (stating that ERISA preemption under § 514(a) "without more, does not convert [a] state claim into an action arising under federal law"); *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 272-73 (2d Cir. 1994) (state law professional malpractice claim against company hired by plaintiff's employer to provide psychotherapy services deemed outside the scope of Section 502(a)(1)(B) and therefore not removable); *Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 353-55 (3d Cir. 1995) (discussing this dynamic in depth).

## B. Discussion

The parties appear to agree that the Plan is "an employee welfare benefit plan" covered by ERISA. (Def.'s Mot. at 5; Pl.'s Opp. at 5-7.) While the parties dispute whether ERISA preempts Fairmont's state law claims, they do not separately address the questions of express and complete preemption. (Def.'s Mot. at 5-7; Pl.'s Opp. at 8-10.)

In a case such as this, "complete preemption [is] crucial to the existence of federal subject-matter jurisdiction." *Wurtz*, 761 F.3d

at 239. "When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Dukes*, 57 F.3d at 355; *Wurtz*, 761 F.3d at 239 (concluding that ERISA did not completely preempt plaintiffs' claims and noting that, "in the absence of an alternative basis for subject-matter jurisdiction, it would be inappropriate to reach the merits of the ordinary express preemption defense"); *Sullivan*, 424 F.3d at 277 ("Because it follows from our holding [of no complete preemption] that the district court lacked subject-matter jurisdiction over this case, we have no occasion to consider the merits of [defendant's] argument that the plaintiffs' . . . claims . . . are subject to ordinary preemption."). Thus, the court begins—and ends—its inquiry with complete preemption.

### 1. ERISA Complete Preemption

A state law claim falls within the scope of Section 502(a) and is completely preempted if it is "brought (1) by an individual who, at some point in time, could have brought [their] claim under ERISA § 502(a), and (2) there is no other independent legal duty that is implicated by a defendant's actions." *White Oak*, 102 F.4th at 606.

The first question is whether Fairmont is an entity "who, at some point in time, could have brought [its] claim[s] under ERISA § 502(a)." *Id.* To satisfy *Davila* prong one, Infiniti must establish that: (a) Fairmont is the type of party who can bring a claim pursuant to Section 502(a), and (b) the actual claims asserted by Fairmont can be construed as a colorable claim pursuant to Section 502(a). *Arditi*, 676 F.3d at 299.

Infiniti's memorandum in support of its motion does not cite *Davila*, much less apply its two-part test. (*See* Def.'s Mot.) Fairmont's memorandum in opposition applies the *Davila* test as originally articulated in that case, arguing that, because Fairmont could not bring its claims under Section 502(a)(1)(B), its claims are not preempted by ERISA. (*See* Pl.'s Opp. at 8-10.) But Fairmont does not discuss whether it could have brought its claims under any other Section 502(a) enforcement provision. Infiniti mentions *Davila* in its reply, arguing that, while *Fairmont* could not bring its claims under Section 502(a)(1)(B), its *employees* could. (Def.'s Reply at 1, 8.)

The analysis is further muddied by Infiniti's apparent concession that Fairmont is not the type of entity that could have brought its claims under Section 502(a). In its opening memorandum, Infiniti states that "ERISA's exclusive remedies do not provide a vehicle for Fairmont to obtain the relief it seeks," urging the court to dismiss the Complaint with prejudice because "Fairmont cannot legally replead its claims under ERISA." (Def.'s Mot. at 4.) While Infiniti asserts elsewhere in its brief that Fairmont is "an ERISA fiduciary," it does not tether that argument to *Davila* or Section 502(a). (*Id.* at 6 (citing 29 U.S.C. § 1002(21)(A)(i)).) In response to Fairmont's argument that Infiniti effectively conceded *Davila* prong one, Infiniti asserts that "while *Fairmont* cannot seek relief via ERISA because it is not an employee or beneficiary covered by the Plan, its *employees* can do so." (Def.'s Reply at 8 (emphases added).) Thus, Infiniti appears to admit that *Davila* prong one is not satisfied.

Evidently, there is some confusion among the parties regarding *Davila*'s first prong. As evidenced by the Second Circuit's decision in *White Oak*, the question is not whether the plaintiff could have brought its claims under Section 502(a)(1)(B), but whether it could have brought its claims under *any* of the enforcement provisions contained within Section 502(a). *White Oak*, 102 F.4th at

14

606. Thus, while the parties appear to agree that Fairmont could not bring its claims under Section 502(a)(1)(B) because it is neither a plan participant nor beneficiary, that is not the end of the inquiry. Rather, the question is whether Fairmont could have brought it claims under any of the civil enforcement remedies listed in Section 502(a).

It is therefore irrelevant whether Fairmont's *employees* could state a claim under Section 502(a). The question under *Davila* is not whether some other individual could have brought some other claims under ERISA Section 502(a), but whether *this* plaintiff could have brought *these* claims under Section 502(a). To the extent the parties limit their preemption analysis to Section 502(a)(1)(B), that reflects an incomplete understanding of the law.

Although the court might read Infiniti's papers as conceding *Davila* prong one, it nevertheless proceeds to an application of *Davila* and concludes that ERISA does not completely preempt Fairmont's claims.

### a. *Davila Prong One, Step One*

*Davila* prong one, step one asks whether Fairmont is the type of party that can bring a claim pursuant to Section 502(a). *Arditi*, 676 F.3d at 299. Section 502(a) provides that a civil action may be brought by, among others, plan participants, beneficiaries, fiduciaries, employers, states, or the Secretary of Labor. *See* 29 U.S.C. § 1132(a). ERISA defines each of these terms.

Infiniti alleges that Fairmont is "an ERISA fiduciary insofar as it sponsors the arrangement for the benefit of its eligible employees and self-insures the benefits," though it provides no support for that conclusory allegation, nor does it tether that argument to the *Davila* test. (Def.'s Mot. at 6 (citing 29 U.S.C. § 1002(21)(A)(i)).) Fairmont does not respond to Infiniti's argument, instead asserting that it could not have brought its claims under Section

502(a)(1)(B), which allows for suit by plan participants and beneficiaries only. (Pl.'s Opp. at 8.) Neither party addresses whether Fairmont could have brought its claims under any other Section 502(a) enforcement provision. Nor is it this court's obligation to craft those arguments on the parties' behalf. *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Services of Oregon, Inc.*, 2013 WL 5295713, at *4 (E.D.N.Y. Sept. 18, 2013) ("It is not this Court's obligation to make a party's arguments for it or fill in the blanks on that party's behalf."); *Chui v. Am. Yuexianggui of Li LLC*, 2021 WL 4482656, at *3 (E.D.N.Y. July 26, 2021) ("The Court is not responsible for developing arguments on a party's behalf or addressing conclusory claims."). Thus, because the parties appear to agree that Fairmont is not a plan participant or beneficiary, the court turns to the only remaining argument relevant to *Davila* prong one: whether Fairmont is an "ERISA fiduciary."

ERISA Section 1002(21)(A) provides, in relevant part:

> [A] person is a fiduciary with respect to a plan to the extent (i) [they] exercise[] any discretionary authority or discretionary control respecting management of such plan or exercise[] any authority or control respecting management or disposition of its assets, . . . or (iii) [they have] any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). ERISA defines fiduciaries "in *functional* terms of control and authority over the plan." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) (emphasis in original). It "does not describe fiduciaries simply as administrators of the plan, or managers or advisers. Instead it defines an administrator, for example, as a fiduciary only *to the extent* that [it acts] in such a capacity in relation to a plan." *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) (emphasis added). Thus, an entity may be a fiduciary for ERISA purposes "because the plan documents explicitly describe fiduciary responsibilities[,] or because that [entity]

functions as a fiduciary." *In re Polaroid ERISA Litigation*, 362 F. Supp. 2d 461, 472 (S.D.N.Y. 2005). While an ERISA fiduciary may wear "two hats," for example, as employer and fiduciary, "the fiduciary with two hats [must] wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225.

Here, neither the Contract nor the Plan assign fiduciary duties to Fairmont. Section 1(D) of the Contract, titled "Benefit Administration" provides, in pertinent part:

> Infiniti HR will manage and administer group supplemental benefit plans covering Assigned Employees, including all benefit claims, record keeping and compliance. [Fairmont] hereby authorizes Infiniti HR to collect insurance premiums for benefit plans from the Employees and remit them to the applicable insurance carrier(s). Infiniti HR shall make timely payments for all of its obligations under such benefit programs. [Fairmont] shall, however be responsible for paying the Employee's portion of any employer sponsored benefit(s) if an Employee's deduction from the wages during any month are not sufficient to pay the Employee's portion of premiums for such benefit(s) or if [Fairmont] fails to promptly notify Infiniti HR of the following: (i) the Employee's termination; (ii) the Employee's election to take leave; or (iii) the enrollment of any employer sponsored benefit. [Fairmont] shall be responsible for paying any difference between the insurance providers invoice and the premium contributions collected from [Fairmont] plus the premium contributions deducted from the Employees.

(Contract at ECF 4.) In short, the Contract assigns to Infiniti the responsibility to "manage and administer" employees' benefit plans, including benefit claims, record keeping, compliance, and

collecting insurance premiums and remitting them to NuAxess. (*Id.*) The Contract assigns to Fairmont the responsibility to pay for certain gaps or differences in premiums and coverage, and to pay for an employee's portion of benefits if Fairmont fails to promptly notify Infiniti of certain changes in an employee's status. (*Id.*) The Contract does *not* empower Fairmont to exercise any "discretionary authority or discretionary control" regarding management of the Plan or its assets, nor does it endow Fairmont with "discretionary authority or discretionary responsibility in the administration" of the Plan. 29 U.S.C. § 1002(21)(A). It simply requires that Fairmont foot the bill in certain circumstances. This is insufficient to render Fairmont an ERISA fiduciary. *See, e.g., Lauder v. First Unum Life Ins. Co.,* 55 F. Supp. 2d 269, 273 (S.D.N.Y. 1999) ("[A]n employer is not a fiduciary of a benefits plan simply because it creates, sponsors or contributes to a plan."); *Geller v. County Line Auto Sales, Inc.,* 86 F.3d 18, 21 (2d Cir. 1996) ("[T]he employer must exercise the requisite degree of control and discretion [over the plan's administration] to be held liable as a fiduciary.").

The Plan, which appears to be a generalized, summary plan description, lists NuAxess as the sole "NAMED FIDUCIARY" of the Plan. (Plan (Dkt. 1-2) at ECF 77.) The Plan's definition of "fiduciary" closely tracks ERISA's definition: "A fiduciary exercises discretionary authority or control over management of the Plan or the disposition of its assets, renders investment advice to the Plan[,] or has discretionary authority or responsibility in the administration of the Plan." (*Id.* at ECF 68.) The "named fiduciary" may "appoint others to carry out fiduciary responsibilities," though there is no evidence or allegation that NuAxess has done so. (*Id.* at ECF 69.) The Plan defines "employer" as "NuAxess and participating employers." (*Id.* at ECF 31.) It also provides that NuAxess is the "plan administrator" or "plan sponsor" responsible for, among other things, "administer[ing] the Plan in accordance

with its terms," "interpret[ing] the Plan," and "decid[ing] disputes which may arise relative to a Covered Person's rights." (*Id.* at ECF 68.)

The Plan identifies NuAxess as the sole named fiduciary and describes various fiduciary responsibilities borne exclusively by NuAxess as the plan administrator. Notably absent from the Plan's language is any indication that Fairmont possesses "the requisite degree of control and discretion" over the Plan's management or administration necessary to be held liable as a fiduciary. *Geller*, 86 F.3d at 21. Fairmont is not a plan trustee with certain discretionary responsibilities, *see White Oak*, 102 F.4th at 602 (concluding that petitioner-trustees "are fiduciaries as that term is used in § 502."), nor is it an investment manager with authority to manage the Plan's assets, *Lowen v. Tower Asset Mgmt. Inc.*, 829 F.2d 1209, 1218 (2d Cir. 1987) (concluding that defendant designated as plan "investment manager" is an ERISA fiduciary). Thus, neither the Plan nor the Contract "explicitly [ascribe] fiduciary responsibilities" to Fairmont. *In re Polaroid ERISA Litigation*, 362 F. Supp. 2d at 472.

Nor is Fairmont a *de facto* fiduciary, notwithstanding the terms of the Contract and Plan. Infiniti argues that Fairmont is a fiduciary because it "sponsors the arrangement for the benefit of its eligible employees and self-insures the benefits." (Def.'s Mot. at 6.) However, as noted above, "an employer is not a fiduciary of a benefits plan simply because it creates, sponsors or contributes to a plan." *Lauder*, 55 F. Supp. 2d at 273. Even if Fairmont sponsors the Plan and self-insures its employees' benefits by, for example, paying for certain gaps or differences in coverage, those responsibilities do not entail "any discretionary authority or discretionary control respecting *management* of" the Plan, or "any authority or control respecting *management or disposition of its assets*." *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366

19

(2d Cir. 2014) (emphases added). Thus, the court concludes that Fairmont is not a fiduciary for purposes of ERISA Section 502(a).

Although neither party addresses the issue, because it is the more obvious argument under *Davila* prong one, step one, the court considers whether Fairmont qualifies as an "employer" within the meaning of Section 502(a). ERISA Section 1002(5) provides:

> The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5). Fairmont self-identifies as an employer. (*See* Compl. ¶ 6 (explaining that Infiniti "assumed the responsibility of *inter alia* managing insurance and benefit services for *Plaintiff's employees*" (emphasis added)); Pl.'s Opp. at 5 (under the Contract, "Defendant became co-employer.").) Infiniti also describes Fairmont as an employer. (*See* Def.'s Mot. at 6.) Thus, the court concludes that Fairmont is an "employer" within the meaning of ERISA, and proceeds to the next step in the *Davila* analysis.

### b.  *Davila Prong One, Step Two*

Davila prong one, step two asks whether the actual claims asserted by Fairmont can be construed as a colorable claim pursuant to Section 502(a). *Arditi*, 676 F.3d at 299. In other words, can Fairmont's common law claims be construed as a colorable claim for relief under those Section 502(a) remedies available to employers?

Section 502(a) contains three enforcement provisions available to "employers": Section 502(a)(8), Section 502(a)(10), and Section 502(a)(11). *See* 29 U.S.C. § 1132(8), (10), (11). The court concludes that Fairmont's claims for breach of contract, breach

of fiduciary duties, negligence, and a declaratory judgment cannot be construed as a colorable claim for relief under any of these subsections.

Section 502(a)(8) allows employers to sue to enjoin or obtain equitable relief from violations of "subsection (f) of section 1021 of this title." 29 U.S.C. § 1132(8). That subsection, entitled "Defined benefit plan funding notices," requires plan administrators to provide annual plan funding notices to certain entities, and details the information that must be contained in those notices. 29 U.S.C. § 1021(f). Fairmont's claims have nothing to do with plan funding notices, and so cannot be construed as a claim for relief under Section 502(a)(8).

Section 502(a)(10) allows employers to sue "in the case of a multiemployer plan that has been certified by the actuary to be in endangered or critical status under section 1085 of this title, if the plan sponsor [failed to take certain action(s)]." 29 U.S.C. § 1132(10). While Infiniti states that the Plan is a multiemployer plan, it does not allege that the Plan "has been certified by the actuary to be in endangered or critical status under section 1085." *Id.*; (Def.'s Mot. at 2.) Nor does Fairmont claim that the Plan is in endangered or critical status. (*See generally* Pl.'s Opp.) Thus, Fairmont's claims cannot be construed as a claim for relief under Section 502(a)(10).

Finally, Section 502(a)(11) allows certain employers, in the case of a multiemployer plan, to sue to enjoin or obtain equitable relief from violations of subsection (l) of Section 1021. 29 U.S.C. § 1132(11). Subsection (l) of Section 1021 requires plan sponsors or administrators of multiemployer plans, upon written request, to furnish "to any employer who has an obligation to contribute to the plan" a notice of (A) the estimated amount of their withdrawal liability if they withdrew "on the last day of the plan year preceding the date of the request," and (B) an explanation of how such estimated liability amount was determined. 29 U.S.C. §

1021(l). In essence, when an employer withdraws from a multiemployer plan and the plan is underfunded at the time of their withdrawal, the withdrawing employer may be forced to compensate the plan to make up for the losses caused by its withdrawal. Subsection (l) of Section 1021 requires plan sponsors or administrators of multiemployer plans to provide employers with, upon request, a notice of the scope of their withdrawal liability and an explanation as to how that liability was calculated. Section 502(a)(11), in turn, allows employers to sue to obtain equitable relief from violations of this noticing requirement. 29 U.S.C. § 1132(11). As with Section 502(a)(8), because Fairmont's claims have nothing to do with withdrawal liability notices, they cannot be construed as a claim for relief under Section 502(a)(11).

Although Fairmont is an "employer" within the meaning of ERISA, its claims cannot be construed as a colorable claim for relief under those Section 502(a) remedies available to employers. Therefore, Fairmont is not an entity who "at some point in time, could have brought [its] claim[s] under ERISA § 502(a)," and the *Davila* analysis ends at prong one. *White Oak*, 102 F.4th at 606; *Teamsters Local 272*, 642 F.3d at 328 (noting that the *Davila* test "is conjunctive; a state-law cause of action is [completely] preempted only if both prongs of the test are satisfied"). ERISA does not completely preempt Fairmont's state law claims.

### 2.   Remand to State Court

When the doctrine of complete preemption does not apply, the court is without removal jurisdiction and cannot resolve the remaining dispute regarding express preemption. It lacks power "to do anything other than remand to the state court where the preemption issue can be addressed and resolved." *Dukes*, 57 F.3d at 355. As discussed above, Section 502(a) does not completely preempt Fairmont's state law claims. Moreover, Infiniti has not asserted an alternative basis for subject matter jurisdiction. *See*

*Wurtz*, 761 F.3d at 239 (noting that, where the defendant removes a case to federal court on the basis of complete preemption and complete preemption is not present, "in the absence of an alternative basis for subject-matter jurisdiction, it would be inappropriate to reach the merits of the ordinary express preemption defense"); (Notice of Removal at 1-3; Civil Cover Sheet (Dkt. 1-3) at 1.) Thus, the court is without removal jurisdiction and cannot resolve the remaining dispute regarding express preemption. It lacks power to do anything other than remand the case to state court.

## IV. CONCLUSION

For the foregoing reasons, Infiniti's motion to dismiss is DENIED, Fairmont's request for oral argument is DENIED as moot, and this case is REMANDED to the Kings County Supreme Court.

SO ORDERED.

Dated:    Brooklyn, New York
          November 21, 2024

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

23